PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE BROOKS, *etc.*, | ) | |
| | ) | CASE NO.  4:20CV0038 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| TODD WERTH, *etc.*, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 7] |

Pending is Defendants Todd Werth, Michelle Glaros, Boardman Township, Ohio, and John Does Nos. 1-3's Motion for Judgment on the Pleadings (ECF No. 7).  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons set forth below, the motion is granted.

## I.  Background

Plaintiff Nicole Brooks brings this action under 42 U.S.C. § 1983 against Chief of Police Todd Werth, Police Officer Michelle Glaros, Boardman Township, Ohio, and John Doe Police Officers Nos. 1-3.  Plaintiff is the duly appointed Administrator WWA of the Estate of Tonya Brooks, deceased.  Plaintiff's decedent (hereinafter "Brooks") was the mother of Nicole Brooks. In April 2014, Brooks and non-party Michael Fiscus began dating.  Within a few months after the start of the relationship, Fiscus began to physically and verbally abuse, and stalk Brooks.  This

(4:20CV0038)

continued intermittently from the middle of 2014 until January 9, 2019, when Brooks, under

alleged severe stress of Fiscus' conduct and the failure of the Boardman Township Police ("the

Police") to take any steps to protect her from Fiscus, took her own life.

Brooks had a protection order against Fiscus, dated May 11, 2016.  That protection order

was in effect until May 11, 2018.  On April 24, 2018, the protection order was extended until

April 24, 2021.  During this time, for example, on September 14, 2017, Brooks filed a report

with the Police charging that Fiscus had engaged in conduct that violated the protection order.

The Police allegedly denied that any protection order was in force.  Ultimately, on September 21,

2017, the Police issued a warrant for Fiscus' arrest.  On November 8, 2017, Brooks filed another

report with the Police again charging that Fiscus had engaged in conduct that violated the

protection order.  Once again, the Police allegedly denied that any protection order was in force.

On December 8, 2017 and February 14, 2018, Brooks filed additional reports with the Police

charging that Fiscus had engaged in conduct that violated the protection order.  On April 17,

2018, Fiscus was convicted of violating the protection order and sentenced to a jail term.

On December 19, 2018, Brooks filed another report with the Police charging that Fiscus

had engaged in conduct that violated the protection order.   At that time, Brooks allegedly

advised the Police that she was afraid that Fiscus was going to kill her.  On January 7, 2019,

Officer Glaros advised Brooks that a warrant would be issued for Fiscus' arrest; and Officer

Glaros filed a criminal complaint to obtain a warrant for the arrest of Fiscus.  On January 9,

2019, however, the Police allegedly advised Brooks that no warrant had been issued for Fiscus'

arrest.  Having been so advised, Brooks allegedly became hysterical and repeatedly stated to a

(4:20CV0038)

representative of the Police that Fiscus was going to kill her.  She called the Police several times

that afternoon to see if Fiscus had been arrested and was advised that Fiscus had not been

arrested.  The next day, the Police discovered that Brooks had taken her own life.  In speaking

with Plaintiff after discovering Brooks had committed suicide, the Police allegedly advised her

that no warrant had yet been issued for Fiscus' arrest.

Count One of the Complaint (ECF No. 1) alleges a violation of Brooks' right to

substantive due process.  It states Defendants were "deliberately indifferent to Brooks' legal

rights under the Ohio Constitution (Article 1.10a aka Marsy's Law)."  ECF No. 1 at PageID #: 8,

¶ 13.  Count Two alleges a violation of Brooks's right to procedural due process.  Count Three

alleges a *Monell* claim against Chief Werth and Boardman Township.

## II.  Law and Analysis

### A.  Standard of Review

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ.

P. 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a

claim under Fed. R. Civ. P. 12(b)(6).  *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*,

342 F.3d 634, 643 (6th Cir. 2003); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th

Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)).  In deciding a motion

to dismiss pursuant to Rule 12(b)(6), or a motion for judgment on the pleadings under Rule

12(c), the Court must take all well-pleaded allegations in the complaint as true and construe those

allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual

(4:20CV0038)

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570.  "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)).

**B.  Plaintiff Does Not Address Her Claims Under Marsy's Law**

The constitutional amendment known as Marsy's Law became effective on February 5, 2018, and expands the rights afforded to victims of crimes. *State v. Lee*, No. CA2018-11-134, 2019 WL 6115155, at *2, ¶ 12 (Ohio App. 12th Dist. Nov. 18, 2019).  Article I, Section10a of the Ohio Constitution, upon which Plaintiff has premised her claims, expressly provides at Sec. (C):  "This section does not create any cause of action for damages or compensation against the

4

(4:20CV0038)

state, any political subdivision of the state, any officer, employee, or agent of the state or of any political subdivision, or any officer of the court."  In Count One of the Complaint, alleging violations of substantive due process, Plaintiff alleges that Defendants were "deliberately indifferent to Brooks' legal rights under the Ohio Constitution (Article 1.10a aka Marsy's Law), and Ohio statutes, and the safety and welfare of Brooks to a degree that 'shocks the conscience' of a reasonable individual," including "failing and refusing to provide Brooks with reasonable protection from Fiscus."  ECF No. 1 at PageID #: 8, ¶ 13.  In Count Two, alleging violations of procedural due process, Plaintiff again suggests that Defendants were "deliberately indifferent to the legal rights under the Ohio Constitution (in particular Marsy's Law), Ohio statutes, and the safety and welfare of Brooks."  ECF No. 1 at PageID #: 9, ¶ 17.  Plaintiff, however, offers no opposition to Defendants' argument that the amendment to Article I, Section 10a of the Ohio Constitution, known as Marsy's Law, does not support a private right of action.  Rather, that law expressly precludes Plaintiff's alleged claims.  *See* Memorandum in Opposition (ECF No. 10); *see also* Memorandum in Support (ECF No. 7).[1]

Because Plaintiff failed to meet her burden in opposing judgment on the pleadings on her claims under Marsy's Law, Plaintiff has abandoned these claims and waived any argument concerning dismissal of such claims.  "[A] plaintiff is deemed to have abandoned a claim when a

---

[1]  The pre-filing written exchange required by the Telephonic Case Management Conference Scheduling Order (ECF No. 5 at PageID #: 40) should have obviated the need for the Court's attention to be drawn to an unopposed argument.

5

(4:20CV0038)

plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011); *see also, e.g.*, *Rivers v. Turner*, No. 3:14 CV 2547, 2015 WL 5444838, at *7 (N.D. Ohio Sept. 15, 2015) (Zouhary, J.) (plaintiff waived any opposition to defendants' motion to dismiss his substantive due process and Eighth Amendment claims by failing to raise arguments in support of his claims in response to defendants' arguments); *Hadi v. State Farm Ins. Cos.*, 2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding plaintiff's failure to respond with any evidence supporting his negligent infliction of emotional distress claim "apparently concedes that summary judgment is proper on this count."). Therefore, Defendants' Motion for Judgment on the Pleadings with respect to the claims under Marsy's Law is granted for the reasons articulated by Defendants.  *See* ECF No. 7 at PageID #: 67.

### C.  Count 1 – Substantive Due Process

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects an individual's life, liberty, and property against government actions.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  A plaintiff can establish a substantive due process violation by demonstrating either a deprivation of a particular constitutional right or an action that "shocks the conscience."  *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 769 (6th Cir. 2005) (citing *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)). Substantive due process requires the deprivation of a "fundamental right."  *Callihan v. Sudimack*, No. 96-3711, 1997 WL 397212, at *3 (6th Cir. July 10, 1997) (*per curiam*).

6

(4:20CV0038)

The Due Process Clause is intended "to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989) (refusing to impose municipal liability for parental abuse of a child sustained after officials failed to remove the child from his father's custody).  The Supreme Court reaffirmed that "our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* The Court added:

> If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 196-97 (footnote omitted).

Courts, including the Sixth Circuit, have endorsed two exceptions whereby state actors have an affirmative duty of protection:  "whe[n] they have a 'special relationship' with an individual, or whe[n] their conduct toward the individual resulted in a 'state-created danger.' " *Brooks v. Knapp*, 221 Fed.Appx. 402, 406 (6th Cir. 2007) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)).  Defendants are not subject to liability as neither exception applies in this case.

7

(4:20CV0038)

### 1. Special Relationship

It is well-settled that forced or involuntary state custody or control is necessary to establish a special relationship with the state. *Doe v. Claiborne County*, 103 F.3d 495, 510 (6th Cir. 1996). The affirmative duty to protect under this exception "arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200. The kinds of "deprivation of liberty" that trigger the special relationship or custody exception are "incarceration, institutionalization, or other similar restraint[s]." *Cutlip v. City of Toledo*, 488 Fed.Appx. 107, 113 (6th Cir. 2012) (quoting *DeShaney*, 489 U.S. at 200).

Brooks was neither incarcerated, institutionalized, nor put under a similar restraint at the time she unfortunately took her own life. There is no allegation that Defendants put her in a position in which she was unable to care for herself. To the extent that the Complaint (ECF No. 1) implies Brooks had a special relationship with Defendants by virtue of a protection order and/or arrest warrant obtained against Fiscus, her claims fail. "[A] protection order does not create a special relationship between police officers and the individual who petitioned for that order." *Hudson v. Hudson*, 475 F. 3d 741, 745 (6th Cir. 2007); *see also Jones v. Union County*, 296 F.3d 417, 430-31 (6th Cir. 2002) ("[W]hatever duty Union County owed to Plaintiff as a matter of Tennessee tort law does not give rise to a constitutional duty in this case. . . . While the Sheriff's Department was well aware of the seriousness of the domestic problems involving Plaintiff and her ex-husband, its failure to serve the *ex parte* order of protection did not create or increase the danger posed to Plaintiff by her ex-husband, or place her specifically at risk.");

8

(4:20CV0038)

*DeShaney*, 489 U.S. at 202 ("A State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes.  But not 'all common-law duties owed by government actors were . . . constitutionalized by the Fourteenth Amendment.' ") (elipses in original) (quoting *Daniels v. Williams*, 474 U.S. 327, 335 (1986)).  The claim in the case at bar is based on the Due Process Clause, which does not transform an alleged tort committed by a state actor into a constitutional violation, as federal courts do not enforce state law in the name of the Constitution.  *Id.*

### 2.  **State-Created Danger**

"Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom*, 136 F.3d at 1066.  In *Kallstrom*, the Sixth Circuit recognized three (3) elements a plaintiff must satisfy to establish liability under the state-created danger exception: (1) an affirmative act that creates or increases the risk, (2) a special danger to the victim as distinguished from the public at large, and (3) the requisite degree of state culpability.  *Id.*; *see also* *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006); *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).  "This is a particularly demanding standard requiring that the state's affirmative action exposed the plaintiff to a danger she wasn't already subjected to." *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp.2d 775, 792 (N.D. Ohio 2013) (Nugent, J.) (citing *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910-11 (6th Cir. 1995)).

(4:20CV0038)

"The Sixth Circuit has never found liability under the state-created-danger doctrine whe[n] the victim committed suicide."  *See Shaw v. City of Dayton*, 183 F. Supp.3d 876, 888-89 (S.D. Ohio 2016) (citing *Jahn v. Farnsworth*, 617 Fed.Appx. 453, 463 (6th Cir. 2015); *Cutlip*, 488 Fed.Appx. at 115).  The Sixth Circuit has succinctly explained why, as a matter of law, suicide does not fall under the state-created danger theory:

> . . . As a general principle, people cannot violate their own constitutional rights, and whe[n] a person makes a free and affirmative choice to end [her] life, the responsibility for [her] actions remains with [her].  That a state official somehow contributed to a person's decision to commit suicide does not transform the victim into the state's agent of [her] own destruction.  *Cf. Jones v. Reynolds*, 438 F.3d 685, 694 (6th Cir. 2006) (holding that where a person "bears some responsibility for the risks she has incurred, it is even more difficult to say that the 'state' has 'created' the 'danger' to her by its affirmative acts").  Given that the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended," the "doctrine of judicial self-restraint" cautions us not to automatically extend the state-created-danger exception to suicide, particularly because the Supreme Court has been largely silent on this doctrine.  *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

*Cutlip*, 488 Fed.Appx. at 116-17.

The state-created danger exception does not apply in the case at bar.  Defendants did not create the danger (*i.e.*, self-destructive impulse) through an affirmative act.  There is no allegation of an affirmative act on the part of Defendants giving rise to liability.  Moreover, Defendants' alleged failure to act, even if proven, does not constitute an affirmative action upon which liability may be premised.  As stated, no affirmative act has been articulated in the Complaint (ECF No. 1), much less one that created or increased the risk that Brooks would be exposed to an act of violence perpetrated by herself or a third-party.  Also, no special danger to

10

(4:20CV0038)

Brooks, during which Defendants' actions placed her specifically at risk, has been alleged.

Finally, there is no allegation that Defendants knew or should have known that their actions

specifically endangered Brooks.

### D.  Count 2 – Procedural Due Process

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff

must show that she had a property interest of which she was deprived without due process of law.

Mandatory enforcement of a protection order does not give one an entitlement to its enforcement,

nor does it create a property interest.  *See Hudson*, 475 F. 3d at 745-46.  For the reasons that

follow, the Court concludes the enforcement of a protection order in Ohio does not create a

property interest protected by the Due Process Clause of the Fourteenth Amendment.

To support her procedural due process claim, Plaintiff argues that Defendants failed to

arrest Fiscus in January 2019 pursuant to an arrest warrant under Ohio Rev. Code § 2935.03(B).

This statute establishes procedures and protocols regarding the making of arrests in certain

situations, and Plaintiff claims it somehow creates an interest that is protected by the Due Process

Clause of the of the Fourteenth Amendment.  However, this statute does not create an entitlement

that rises to the level of a protected property interest for purposes of due process.  *See Calvey v.*

*Vill. of Walton Hills*, No. 1:18 CV 2938, 2020 WL 224570 (N.D. Ohio Jan. 15,  2020) (Gaughan,

C.J.), appeal pending, No. 20-3139 (6th Cir.).

Citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) and *Hudson, supra*,

the district court in *Calvey* found that the language of § 2935.03(B) does not rise to the level of a

protected property interest for purposes of due process.  2020 WL 224570 at *9.  The district

11

(4:20CV0038)

court stated that while the statute may contain some mandatory language, it leaves room for a police officer to exercise discretion ("it is the *preferred course of action* in this state that the officer arrest"). *Id.* (emphasis in original).  Because the manner of enforcement was within the discretion of the Police in the case at bar, Plaintiff cannot claim a property interest in the enforcement of the protection order.  *See Castle Rock*, 545 U.S. at 756 ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Ohio Rev. Code § 2935.03 speaks to the arrest and detention of a suspect, until a warrant can be issued.  Plaintiff acknowledges that Officer Glaros filed a criminal complaint to obtain a warrant for the arrest of Fiscus.  Based upon Plaintiff's argument, however, police officers could be liable any time an arrest warrant is issued, but has not been served, regardless of the time constraints put upon police departments as to the service of such warrants or whether a suspect can be located.  Plaintiff relies on *Jasinski v. Tyler*, 729 F.3d 531 (6th Cir. 2013), but the Michigan statute at issue in *Jasinski* mandated action based upon substantive predicates.  The issue in that case was whether those predicates were met.  *Id.* at 541-44.  In the case at bar, there was no statutory mandate to secure Fiscus' arrest.  Plaintiff misconstrues the instructive nature of *Jasinski*, which requires that the state statute "must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present."  *Id.* at 541 (citation and quotation marks omitted).  Such language does not exist in § 2935.03.

**E.  Count 3 –** *Monell*

Plaintiff makes a blanket assertion that

> 21.     Boardman, through the Police and its Chief, Werth, created and permitted
>           to exist a culture and custom of deliberate indifference towards the

12

(4:20CV0038)

> substantive and procedural due process rights of persons, like Brooks, who
> were victims of domestic violence and claim violations of protection
> orders.  Boardman[,] through the Police[,] regularly engaged in practices
> that created, constituted, and fostered an unjustifiably disinterested,
> deliberately indifferent approach to identifying, monitoring, protecting,
> and responding to the needs of persons, like Brooks, who were victims of
> domestic violence and claim violations of protective orders.

ECF No. 1 at PageID #: 11.  Plaintiff merely recites the elements of a cause of action under

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), without any factual matter to support her

claim.  Count 3 will be dismissed for failure to meet the requisite *Twombly*/*Iqbal* pleading

standards because it fails to set forth sufficient factual support for the *Monell* claim against Todd

Werth, in his official capacity, or against Boardman Township, Ohio.

A plaintiff can bring a *Monell* claim by showing one of the following: "(1) the existence

of an illegal official policy or legislative enactment; (2) that an official with final decision

making authority ratified illegal actions; (3) the existence of a policy of inadequate training or

supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights

violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  Plaintiff has failed to

properly allege facts sufficient to support any of the theories of *Monell* liability.  Plaintiff has not

supported her allegations that Boardman Township had an official policy of failing to properly

identify, monitor, protect, and respond to victims of domestic violence and claim violations of

protective orders; has not supported her allegation that Chief Werth ratified a subordinate's

unconstitutional conduct; has not supported, or even alleged, that Boardman Township held a

clear and persistent pattern of illegal activity giving rise to a failure to train claim; and has not

supported her assertion that Boardman Township's custom was to neglect or fail to properly

(4:20CV0038)

identify, monitor, protect, and respond to victims of domestic violence and claim violations of

protective orders.

In addition, because no constitutional violation has been shown, Plaintiff's *Monell* claim

against Chief Werth, in his official capacity, and Boardman Township cannot survive as a matter

of law. There can be no liability under *Monell* without an underlying constitutional violation.

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *see also Farinacci v. City of Garfield*

*Hts.*, No. 1:08CV1355, 2010 WL 1268068, at *5 (N.D. Ohio March 30, 2010) (O'Malley, J.)

("[When] no constitutional violation occurred, there can be no *Monell* claim against the City,

regardless of its policies."), *aff'd*, 461 Fed.Appx. 447 (6th Cir. 2012); *City of Los Angeles v.*

*Heller*, 475 U.S. 796, 799 (1986); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There

can be no liability under *Monell* without an underlying constitutional violation.").

**F. Qualified Immunity**

Once a defendant raises qualified immunity, the burden shifts to the plaintiff, who must

demonstrate both that the official violated a constitutional or statutory right, and that the right

was so clearly established at the time of the alleged violation that every reasonable official would

have understood that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S 731,

741 (2011). If the plaintiff fails to carry this burden as to either element of the analysis, qualified

immunity applies and the official is immune. *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491,

494 (6th Cir. 2012). "Clearly established law" should not be defined "at a high level of

generality" and the clearly established law must be "particularized" to these facts of the case.

*Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

14

(4:20CV0038)

In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity.  533 U.S. 194, 201 (2001).  The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established.  *Id.*  In *Pearson v. Callahan*, the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.  555 U.S. 223, 236 (2009).  The Court does not address the qualified immunity argument of Chief Werth and Officer Glaros because it concludes for the reasons set forth above that Plaintiff has not sustained her burden to demonstrate a violation of the Fourteenth Amendment.[2]

### III.  Conclusion

For the reasons above, Defendants' Motion for Judgment on the Pleadings (ECF No. 7) is granted.


IT IS SO ORDERED.


__May 22, 2020__                             __/s/ Benita Y. Pearson__
Date                                         Benita Y. Pearson
                                             United States District Judge

---

[2]  The Fourteenth Amendment does not impose on police officials a duty to protect persons from third-party violence or self-inflicted harm, and the existence of a protection order does not alter this rule.

15